*19 OPINION.
Steeni-iagen:
This proceeding has been feelingly presented on both sides, counsel for petitioner insisting upon a cold regard for the bare documentary evidence and the scant oral testimony of the attorney who drew the will and the agreement, and counsel for respondent presenting a circumstantial analysis of motives and conduct to establish a plan calculated to give substance to a factitious loss and thus artificially to reduce income tax. While we remain unstirred by these discussions of motive and justification, we are impressed by the unusual structure of legal facts upon which petitioner’s claim rests and upon the subtlety of the argument devised to support it. The contentions of petitioner have been carefully prepared and have been no less carefully considered.
It is first urged that the only inquiry open for our consideration’ is, not whether petitioner has sustained a loss or whether the alleged loss is within the statutory description of deductible losses, but whether 1923 is the proper year of deduction, as claimed. Thus the issue is attempted to be confined to a hypothetical determination of the year of deductibility after assuming the loss to be actual and legally deductible.
The issue is not so narrow, even under the pleadings, to say nothing of the Board’s statutory function to redetermine the deficiency. In the notice of deficiency of July 11, 1927, appended to the petition, the respondent set forth the petitioner’s claim “ that the loss *20 in question was sustained in a transaction entered into for profit,” and referred to the ^loss “ disallowed as indicated in office letter of March 5, 1927,” (not pleaded or in evidence) and closed by saying “ It is the opinion of this office, however, that inasmuch as your wife still holds the stock of the Lehman Glove Company that there is no loss in this transaction until it is disposed of. The original audit is, therefore, sustained.” The “ original audit ” does not appear. This was the final notice which created petitioner’s right to proceed in the Board under section 274 (a), Revenue Act of 1926.
In his petition, the petitioner assigned five errors of respondent in his determination,, (a) “impliedly holding that the net estate of Leo J. Lehman consisted chiefly of the stock of the J. & D. Lehman Co., Inc.”; (b) “impliedly holding that the net assets taken over by Maud L. Carnrick was the J. & D. Lehman company stock”; (c) “ not holding that thé valuation of the net estate as determined by the court upon the judicial settlement was a complete valuation of the legacy payable”; (d) “not holding that upon settlement of the judicial accounting of the estate of Leo J. Lehman, a closed transaction occurred, resulting in a loss or gain to Maud L. Carnrick of the difference of the cost of the legacy and the net value of the legacy as determined by such judicial settlement”; and (e) “not allowing as a deduction the loss sustained in 1923 by Mrs. Carnrick as a result of the purchase of the specific legacy bequeathed to Mrs. Leo J. Lehman.” The petition then alleged facts in paragraphs 5(a) to 5(s), inclusive, which were denied in the answer, except that respondent admitted that Maud Carnrick was petitioner’s wife, that they filed a joint return, took a deduction thereon of $152,945.89 as described and that “ as a result of the audit of petitioner’s return the Commissioner determined that no loss was sustained in 1923 as a result of the purchase of the Zora Lehman legacy,” and that he made no change in any other items. Among the facts alleged in the petition and denied in the answer were the terms of the will, ■its probate, the agreement and its terms, the payment, the performance, the modification, the nature and value of the gross estate, the judicial accounting and decree and their contents, and the insufficiency of the net estate to pay the specific legacy or “the sum paid for it by Maud L. Carnrick.” It was denied that “ the Commissioner held that no loss upon the purchase of the Zora Lehman legacy can be deducted or has been sustained until the J. & I). Lehman stock had been disposed of.” It was denied that “ the net assets of the estate remaining: namely, $34,545.11, were paid lo said Maud L. Carnrick as assignee of Zora Lehman in cash and property.”
*21 Upon these pleadings, without amendment, the proceeding came to trial. No facts were stipulated, and the findings indicate substantially the evidence introduced. In our opinion, the issues are not restricted as petitioner argues. The phrasing of the notice of deficiency relating to the item in controversy, even if clear, is not the cause of action and does not frame the issues. The petitioner may not, without an expressly pleaded admission or a stipulation, treat the notice as an official acquiescence by the Commissioner in all petitioner’s propositions as to this item except those expressly determined adversely to him. If the Commissioner finds one fact or reason which he believes supports his adverse determination, he is not required to express his views on any or all other matters relating to the item, and his failure to deal with them carries no implication as to their treatment. It is not the Commissioner’s method of determination or computation which is the substance of the proceeding, for the deficiency may be correct despite a weakness in arriving at it or explaining it. Woodside Cotton Mills Co., 13 B. T. A. 266; Jacob F. Brown et al., 18 B. T. A. 859. “ It is immaterial whether the Commissioner proceeded upon the wrong theory- in determining the deficiencies. In any event the burden was on petitioner to show that the assessment was wrong.” Altschul Tobacco Co. v. Commissioner, 42 Fed. (2d) 609.
Petitioner cites Blair v. Mathews, 29 Fed. (2d) 892, and Popular Priced Tailoring Co. v. Commissioner, 33 Fed. (2d) 464, to support his argument that only the year is in question. But those decisions consider different situations. In the Mathews case, the respondent sought in the Court of Appeals to change the issue from that tried and decided in the Board by suggesting a doubt as to facts which had been at least tacitly conceded at the trial. This the court did not entertain. In this case, the deficiency notice contains no admissions, the petition expressly alleges many facts denied by the answer, all relating to the one item, and it is not that the respondent is seeking to broaden the controversy, as in the Mathews case, but that petitioner is seeking to narrow it and escape the burden of his own pleading. In the Tailoring case, the court held that Rule 50 did not permit respondent to present to the Board after trial a new consolidated deficiency after petitioner had succeeded as to the only issue pleaded and tried, that of affiliation. This, too, is plainly different from the present attempt by petitioner to depart from his own pleading and the answer.
The questions, therefore, to be decided are whether the facts in the record establish that Maud Carnrick by the agreement of August 23 entered into a transaction for profit, and if so, that in such transaction she sustained a loss in 1923 deductible under section 214 (a) (5), Revenue Act of 1921.
*22 There is nothing in the record to indicate that, even if there were a loss, there was any transaction entered into for profit. By the terms of the will Zora Lehman’s legacy was limited to $200,000 payable over a period of 23 months without interest. Under no circumstances shown by the evidence could it be worth more than $200,000, and on August 23, 1921, a discount would have reduced the present value of the expectancy. So, whatever may have been Maud Carnrick’s motive in the contract of August 23, 1921, it was not profit from the purchase of the legacy or the assignment of the rights under the legacy, even assuming, as perhaps we must, that as executrix she might properly enter with the legatee into such a transaction for the purpose of personal profit.
The statute has always confined deductible losses to certain carefully described classes, and the qualifications of these classes may not be ignored. The reasonable intendment of restricting non-business transactions resulting in losses to such as were entered into for profit is that, since the intended profit would be taxable, the loss suffered instead should be deductible. When there is no intended profit and naturally could be none, there is no just demand for a deduction of a loss. Personal losses, except by theft and other occurrences provided in section 214 (a) (C), have never been broadly allowed by Congress to be deducted, and the provisions of section 214 (a) (5) should not be construed so broadly as to override this general legislative purpose. In a case such as this, the taxpayer seeking the deduction must prove in fact that the transaction resulting in the alleged loss was and reasonably might have been entered into for profit. Cf. E. B. Stephenson v. Commissioner, 43 Fed. (2d) 348. We are of opinion from the evidence that the agreement of August 23, 1921, was not such a transaction.
But assuming, contrary to our opinion, that there was such a transaction as carried the possibility of deductible loss, there are several reasons for finding that no loss may be deducted in 1923. Maud Carnrick contracted for the assignment by Zora Lehman of her legacy and her resignation as executrix and the renunciation of commissions. These Maud Carnrick got, and the fact that they may have been worth less than she paid for them may not be a realized loss. An unfavorable purchase is not a realized loss. If we regard the contract as an acquisition not merely of the legacy, but of the right to the property coming by way of the legacy, it still is but a purchase of the Lehman Co. stock at a price, and carrying no present loss, even if we accept as proven that the legacy when distributable only yielded in fact $34,544.11.
But, if we assume, again contrary to our opinion, that the value of the legacy when received could be used to measure a loss, the- proof *23 of such value is inadequate. It consists only of the executor’s uncontested account and its settlement by the surrogate. There was no occasion for a controversy in the probate court and no adjudication upon evidence, but only a perfunctory approval where everyone was satisfied. This does not discharge the petitioner’s burden in this proceeding of proving in fact the values upon which he relies. Irrespective of what may be the force and effect in proceedings before the Board of judgments of State courts upon matters of fact after a contest, cf. Charles L. Suhr, 4 B. T. A. 1198; Guaranty State Bank, 12 B. T. A. 543, there is no doubt that a formal settlement of an executor’s uncontested account is not, as against the respondent here, res adjudicada of the inventory or its valuation nor does it alone establish a prima facie case of their correctness. This is also true of values accepted by the estate-tax division of the Bureau of Internal Revenue in settling the Federal estate tax on the decedent’s estate where there was likewise no contested litigation.
Furthermore, the executor’s account and estate-tax return purported to state an inventory and valuation at the time of death in 1921, and this does not prove the value of the property used in distribution in 1923, the year when petitioner claims his deduction.
We are, therefore, of opinion that the Commissioner’s determination is correct, and it is not necessary to consider whether there has been a plan starting with the decedent’s gift in contemplation of death of the Lehman Co. stock to bring about an artificial loss as the basis of the deduction claimed. And it is al'so unnecessary to intimate whether the $200,000 or any other amount can be taken to be the basis for any computation of loss in respect of this matter in future years.

Judgment will he entered for the respondent.