JOHN G. WICKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wicker v. Commissioner
Docket No. 20384-86.
United States Tax Court
T.C. Memo 1988-225; 1988 Tax Ct. Memo LEXIS 254; 55 T.C.M. (CCH) 893; T.C.M. (RIA) 88225; May 19, 1988. James Allen Brown, for the petitioner. Steven C. Coen, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Additions to Tax Section
Year
Deficiency
6653(a) [1]
6653(a)(1)
6653(a)(2)
6659
1979
$ 13,127
$ 656
-
-
$ 3,938
1980
3,152
158
-
-
946
1982
9,593
-
$ 480 *
2,878
1983
10,726
-
436 **
3,218
*256 Respondent determined further that the underpayments of taxes for each of the years are subject to interest at a rate determined under section 6621(d). [2]
After concessions by both parties, the issues that we must decide are: (1) Whether petitioner is entitled to a $ 17,900 loss in 1983; and (2) whether petitioner is liable for additions to tax under sections 6653(a) and 6659 for each of the years at issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of Little Rock, Arkansas, when he filed his petition herein. He is an account manager for Ryder Truck Rental Inc., and holds a Bachelor of Business Administration degree from Southern State College. He has neither experience nor expertise in the videotape industry, and he has had no training in taxation. In 1982, petitioner purchased two master videotapes for $ 90,000 each. The master videotape program petitioner invested in *257 is the same, and the mechanics of the program were exactly the same, as the program described in Chester v. Commissioner,T.C. Memo. 1986-355. Petitioner's total cash investment in the tapes was $ 18,000. He paid $ 17,900 of that amount in 1983. Petitioner signed a note for the $ 162,000 balance of the price of the tapes. Before purchasing the two videotapes, petitioner received a legal opinion that had been prepared for the promoter of the tapes. The opinion stated that the attorney who wrote it had "researched Section 38 of the Internal Revenue Code as it specifically applies to the Investment Tax Credit for the production rights of video tapes for educational purposes." The opinion did not, however, state whether purchasers of the videotapes were entitled to claim investment tax credit for the tapes, and warned that "any prudent investor should consider obtaining independent advice from their accountant or legal consultant relative to the investment tax credit." (Emphasis added.) Petitioner's supervisor at Ryder Truck Rental Inc., who purchased videotapes from the same program as did petitioner, discussed the program with an attorney *258 who was independent of the promoter of the tapes. The attorney said that he was concerned that purchasers of the videotapes had to sign promissory notes for the difference between the cost of the tapes and their cash downpayments. He was concerned that the price of the tapes was too high and that the notes would have to be paid. The supervisor relayed that advice to petitioner. Before purchasing the tapes petitioner also spoke with an acquaintance who had already purchased a tape from the same program. The acquaintance told petitioner that he had been audited by respondent after he had invested in the program, that the audit had resulted in no change, and that he believed that the tapes were good and legitimate investments. He also told petitioner that the tapes were generating revenue as the promoters had promised and that he had heard that a court in Arizona had ruled that the program was legitimate. Petitioner visited the promoter's facility located in Cabot, Arkansas, before purchasing the tapes. While there he viewed equipment for filming and recording tapes, and watched tapes being edited. He met and spoke with the promoter's president and controller, who impressed him *259 as being honest and religious. He purchased the tapes without having their values appraised. He never viewed the tapes, never took physical custody of them, and never purchased insurance for them. Petitioner reported the following losses from the videotapes on his 1982 and 1983 Federal income tax returns: 1982
1983
Royalties Received
$   5,259 $  22,607 Interest Expense
(1,897)
(14,973)
Depreciation Expenses
(27,000)
(39,600)
Net Loss from Tapes
($ 23,638)
($ 31,966)
Petitioner claimed an $ 18,000 investment tax credit from the tapes on his 1982 return. [3] He used $ 1,721 of the credit to reduce his 1982 Federal income tax liability to zero. He carried the remainder of the credit back to 1979 and 1980 in March 1983 by filing an application for a refund of taxes he had paid during those years. Petitioner claimed a $ 180,000 basis in the tapes and used that basis to compute his depreciation expense and investment tax credit. Petitioner's 1982 Federal income tax return *260 was prepared by a CPA to whom petitioner was referred by the salesman who sold him the tapes. Petitioner's 1983 return was prepared by another CPA to whom he had been referred by the CPA who prepared his 1982 return. Respondent audited petitioner's Federal income tax returns for 1982 and 1983 and disallowed the net losses and investment tax credit that petitioner had reported from the tapes. Respondent's determination resulted in the disallowance of the tax credit that petitioner had carried back to 1979 and 1980. One of the grounds on which respondent disallowed the depreciation and tax credit claimed for the tapes was that petitioner had failed to establish that his basis in the tapes was more than the cash he had paid for them. Respondent determined that the entire underpayment of tax for each of the years at issue as due to negligence within the meaning of section 6653(a). Petitioner now concedes that he is not entitled to the net losses and tax credit from the videotapes that he claimed on his returns. He argues, however, that he is entitled to a loss deduction under section 165(a) for the cash he paid in 1983 for the tapes, [4] and that he is not subject to the additions *261 respondent determined under sections 6653(a) and 6659. OPINION Section 165 Loss
The first issue for decision is whether petitioner is entitled to a $ 17,900 loss in 1983 for the cash payment he made that year for the videotapes. Although respondent argues that petitioner is not entitled to deduct the $ 17,900 because he did not purchase the tapes for profit, see sec. 165(c)(2), we need not decide that issue. Petitioner has failed to establish a more basic prerequisite to deductibility under section 165 -- that he suffered a loss in 1983, or during any of the other years at issue. Petitioner argues that our decision in Chester v. Commissioner,T.C. Memo. 1986-355, establishes that the two tapes he purchased were worthless and that he therefore suffered a loss when he paid $ 17,900 for them. We disagree. We found in Chester that the tapes from the program that J's tapes were from had "de minimis value," and specifically disagreed with respondent's assertion that the tapes had no value. Chester v. Commissioner, supra at *262 n. 23. As the tapes had some value, they were not "worthless." Higginbotham-Bailey-Logan v. Commissioner,8 B.T.A. 566, 578-579 (1927). We recognize that petitioner may, in fact, have purchased the tapes for more than their fair market value. The purchase of an asset for more than its fair market values does not, however, establish a loss for tax purposes. Grigsby v. Commissioner,87 F.2d 96, 97 (7th Cir. 1937), affg. 33 B.T.A. 568 (1935), cert. denied 301 U.S. 690 (1937); Carnrick v. Commissioner,21 B.T.A. 12, 22 (1930). Petitioner had the burden of establishing that he actually sustained a loss during the taxable years at issue. Welch V. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). He failed to do so. So far as this record shows, he still owns the tapes, and there was no closed and completed transaction or other identifiable event in 1983 which would give rise to a recognizable loss in that year under section 165. We accordingly hold the petitioner has failed to prove that he is entitled to deduct the $ 17,900 at issue. Section 6653(a) Addition
The next issue for *263 decision is whether petitioner is liable for additions to tax for negligence under section 6653(a) for each of the years at issue. Petitioner bears the burden of proving that the additions determined by respondent in his notice of deficiency do not apply. Barton v. Commissioner,424 F.2d 1295, 1296 (7th Cir. 1970), affg. per curiam T.C. Memo. 1969-46, cert. denied 400 U.S. 949 (1970); Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Negligence under section 6653(a) is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Our findings establish that petitioner claimed the net losses and investment tax credits that resulted in the deficiencies at issue after receiving a legal opinion warning him to obtain independent advice from his accountant or legal consultant, and after being told that another attorney was concerned that the price of the tapes was too high. Despite these warnings, petitioner failed to obtain any independent advice from an accountant or legal consultant, and *264 failed to have the value of the tapes appraised. Petitioner instead relied largely on his own investigation of the merits of the tapes in concluding that he was entitled to claim the losses and tax credit that he reported on his returns from the tapes despite the fact that he had no experience or expertise in the videotape industry and lacked any training in taxes. Although petitioner discussed the merits of the tapes with acquaintances, there is no evidence that the acquaintances had any expertise in taxation or the videotape industry. Instead of seeking independent tax advice, petitioner had his 1982 return prepared by a CPA whom he was referred to by the salesman who sold him the tapes and had his 1983 return prepared by a CPA whom he was referred to by the CPA who had prepared the 1982 return. We think a reasonable investor in these circumstances would have obtained advice from a competent and independent tax advisor before claiming the net losses and tax credit that petitioner reported from the tapes. See Bilyeu v. Commissioner,T.C. Memo. 1988-209. We accordingly hold that petitioner has failed to prove that he is not subject to the addition to tax *265 for negligence for each of the years at issue. We hold further that petitioner has failed to prove that the entire underpayments for 1982 and 1983 are not attributable to negligence for purposes of the section 6653(a)(2) addition. Section 6659 Addition
The final issue for decision is whether petitioner is liable for additions to tax under section 6659. That section provides for an addition to tax for underpayments attributable to valuation overstatements. [5] Petitioner argues that respondent erred in failing to waive the addition to tax as allowed by section 6659(e). Section 6659(e) provides that "[the] Secretary" [6] may waive the section 6659 addition if the taxpayer shows both that there was a reasonable basis for the valuation or adjusted basis claimed on the *266 return and that the claim was made in good faith. Assuming, arguendo, that the secretary's decision to deny a waiver is an exercise of his discretion which is subject to review by this Court, cf. Estate of Gardner v. Commissioner,82 T.C. 989, 994-1001 (1984), we would find no abuse of discretion in this case. Although petitioner may have proven that he claimed the $ 180,000 basis in the videotapes in good faith, he has failed to prove that there was a reasonable basis for that adjusted basis. Petitioner introduced no evidence that he had a reasonable basis for claiming a $ 180,000 adjusted basis in the tapes, conceded respondent's determination that he was not entitled to the tax credit he claimed based on that basis, and failed to prove that he was not negligent in claiming the net losses and tax credit that resulted from his claim of the $ 180,000 basis. In these circumstances, we conclude that petitioner has failed to prove that respondent erred in determining that petitioner is liable for additions to tax under section 6659 for each of the *267 years at issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on an underpayment of $ 9,593. ** 50 percent of the interest due on an underpayment of $ 10,726.↩
2. Sec. 6621(d) was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A)-(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750. ↩
3. The $ 18,000 investment tax credit petitioner claimed from his investment in the videotapes exactly equaled the $ 18,000 of cash he paid for the videotapes. ↩
4. Petitioner does not argue that he is entitled to a loss deduction for the remaining $ 100 cash he paid for the tapes. ↩
5. Sec. 6659(a) provides, in relevant part, that if an individual "has an underpayment of the tax imposed by Chapter 1 for the taxable year which is attributable to a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable." Sec. 6659(b) defines applicable percentage, and sec. 6659(c) defines valuation overstatement. ↩
6. "Secretary" means the Secretary of the Treasury or his delegate, e.g., respondent. Sec. 7701(a)(11)(B). ↩